Thank you, your honors. All right, um, Madam Clerk, would you please call the next case? In re Gleich, David Winterton appearing for appellants, James Imes appearing for appellee. All right, good afternoon. Mr. Winterton, would you like to reserve any time for rebuttal? Yes, I think I'll reserve seven minutes. All right. All right. Thank you. Please proceed. Thank you, your honor, and I appreciate your time and the opportunity to be able to address this issue. I know you've read the briefs and everything, so I'm just going to highlight a couple of things that I think is important. And I'm not going to get into the details of the factual. This is more the issue of the sanctions for striking the answer. But in this case, you have the glitches, sold the property, put the money in a bank account, and before filing bankruptcy, purchased another house. Now, the United States trustee's office looked at this transaction, and they filed a non-dischargeability action. We were able to go ahead and have all the discovery in that case. There was no issue. There was no problems. There was depositions taken in which Mr. Imes, representing the trustee, attended. And certain parts, he was out because it dealt with his issue that we weren't sure if it was appropriate that he'd be there. But there were no problems. Everything went smoothly. Everything went well. Then when the issue of the house, the trustee says, maybe I can get this house. So they file a turnover, an action, saying fraudulent conveyance, and want this. Well, they've been given all the discovery from the United States trustee's office on the litigation. No problem. No, they appeared, my clients appeared for depositions. It went smoothly. But all of a sudden now, everything seems to go wrong. Now, Daniel, he is a son. His name is on the title of the property. He did serve his answers to his interrogatories late. But that's all he did. He has not done anything, didn't cause any delay or anything. But yet, his answer is stricken. If you go over the Malone factors, yes, we're to get this done expeditiously. But he didn't cause any delay by being, I think it was 15 days that it was late. Did it affect the docket? Did the court have to move anything, change anything because of it? No. The trustee and their opposition has not identified how they have been prejudiced because of the actions of what Daniel did. Public policy says, hey, these things need to be done on the merits. And we believe that they have been denied their due process because it is not heard on the merits. He hasn't even been addressed this issue. But yet, 15 days late, he gets sanctioned and his answer is stricken. We believe that's too high, too burdensome. The last thing is, did the court consider, was there available less dramatic sanctions? They were not even addressed. You know, I don't know, the court could have sanctioning for being 15 days late. The court could have done, looked at was there any damages and so on. But if you look at the record, the court never really considered that. All that the court did was, no, we're going to strike the answer and that's it. And we believe we're all in a human world. And I believe that's too much of a burden, too much of a punishment to just strike the answer for being those days late. There was no motion to compel, nothing that was filed like that. So it didn't take up any court's time. It didn't cost any more money. And so we just don't feel like it was appropriate. Now, we'll get to the glitches. First off, in regards to this, when you consider this, the trustee waited five months to commence discovery on this. They had been getting all the discovery from the United States trustee's office. They got the depositions. They've got all the documents. So everything's there. I didn't need to do any discovery because we had already produced and gotten all the documents from the cause of action by the United States trustee's office. And the trustee and Mr. Imes, who was representing the trustee, they had all these documents. So it wasn't like we're delaying, hindering and so on. So now, all of a sudden, they wait five months and now time's starting to become a crunch towards the. Counsel, just to clarify, if I might. So you're referring to the fact that the complaint was filed in, let's say, May of twenty twenty four and the first deposition wasn't noticed until December of twenty twenty four. Yeah, I guess it's more than five months. So you're right. And then and then it's clear that they did notice the deposition and your clients, the glitches did not appear for that deposition, right? That is correct. And it's also not disputed that you didn't before that deposition failure to appear, you didn't see and never saw it during the course of these proceedings, a protective order. No, I did not seek a protective order. Why didn't you do that? Because when it happened is, is there were two reasons that caused it. Number one was the death of a family member. That one, you know, it was just unexpected. And so I did not. I called up the trustee and he was very gracious and consented. And I appreciate that. The other thing came regarding the accident that took place. Now, that one, again, was something that it was like I didn't know about until shortly before the deposition. And so I was actually thinking my client was going to be calm and be able to. But I didn't know about it. So by the time the deposition came up, I didn't have time to run to the court for a protective order. And so that's why I couldn't you couldn't see because of the timing, you couldn't seek one before the deposition was missed. But you could have sought a protective order or done something after the deposition was missed, before the motion for sanctions was filed. Actually, we were trying to get something done and there were certain dates that were set to redo it. They had suggested. But the problem was, is my schedule, not my clients. It was my schedule that I couldn't do those dates. And the trustee wasn't being very flexible. He said the 19th, that's it. Well, I was in another trial at that time and I couldn't. And so that's why I feel like why should my clients be punished because of my schedule? And I could have. I guess I see what your point is. I since we we were trying to work it out, but since it didn't, maybe I should have immediately run to the court. But I was surprised when he just went and asked for the sanction. OK, can I can I pull something apart a little bit, counsel? Yes, I certainly get the overall thrust of your argument. To what extent, if any, do you think the bankruptcy court made a factual error? To what extent, if any, do you think the bankruptcy court made a legal error? Is there a finding a fact in here that's clearly erroneous? I believe, yes, because they're talking about being willful and deliberate and bad faith in trying to avoid these depositions. And factually, I just can't see it when they've been so cooperative in the first cause of action. And they were trying to in this one, I think, factually, by saying the accident and a death. I believe the court should have looked at that and stopped saying what the court was looking at, a couple of misdepositions and then from the trustee's standpoint, some non responsiveness with respect to further commitments on a matter that is of some sensitivity to your client so that, you know, on that basis, the finding was clearly erroneous. I believe so, because I don't think that if the court had also looked at the efforts that were made, I mean, what the trustee said is you've got to do it by this deadline and that's it. And they didn't consider what about counsel schedule because it was in there that counsel was not available at that time. But I think the court just ignored it and said, no, that's what needs to be done. How about a legal error? The legal error is I was going over the 5 factors. Yeah. Yes, and you go over the 1st, 1 expeditious. There was no, I can understand that. Yes, we're trying to get it done, but. And it did delay things, I will admit that 1 and I give that 1 to the trustee, but as for affecting the docket, we still could have gotten this done had they if they had worked with us, but they weren't willing to work with us anymore. The prejudice, there is been no prejudice to the trustee in regards to public policy. Again, that's strongly in my client's position. And the court again, never looked at where I think legally they were wrong is they should or erred. I shouldn't say wrong. Because I respect the judge in that she should have looked for other areas. There was no motion to compel other type of sanctions and I realize we've taken you within your within 5 minutes now. So. That's fine and I'll stop there. Thank you. Thank you. All right, Mr. Good afternoon. May it please the court Jason council for Troy as Fox chapter 7 trustee for the bankruptcy estate. I appreciate the opportunity to discuss this with the panel this morning or this afternoon. The factual context here, I think, is particularly relevant to your decision in this matter. We received merits. Do you mean the merits of the claims? Sorry, say, pardon me. You're not referring to the merits of the claims that the trustee you're referring to the factual context of the order that was issued by the bankruptcy court. Correct the factual the background history that we're dealing with here. Sorry. Let me ask you. Let me ask you a question. Okay. The trustee sought to strike Daniel's answer and have the entry of a default judgment based upon his failure to timely answer interrogatories. Correct? Correct. Didn't the trustee receive the answers from Daniel on February 5th, 2025, albeit unverified before the trustee filed the motion for sanctions on February 20, 2025 and almost 2 months before the hearing on the motions for sanctions. On April 1st, 2025, that is correct. Your honor. The trustee did receive those responses eventually, but in the motion for sanctions, the trustee asserted that the trustee had similar issues securing the cooperation of Daniel because the interrogatories were served on December 19th and his responses were due on January 19th, 2025. January 19th passed without response. The trustee contacted counsel on January 27th and inquired again on January 31 and on February 1, defendants counsel indicated responses were forthcoming. And when no responses were received by February 3rd, the trustees counsel emailed a request for meeting confer on the missing responses pursuant to local rule 30. 7037 and the responses, albeit unverified, were finally delivered on February 5th, 2025, citing to exhibit 7 to the Iams declaration. But a review of the Iams declaration and the attachments to exhibit 7 only reveal contacts by the trustee and counsel for Daniel Gleish between or Gleish between 20, January 27, 2025 and February 5th, 2025. When the unverified responses were received by the trustee, there's no indication in the motion or in the attachments that the trustee was dissatisfied with Gleish's interrogatory responses or the trustee sought to have Daniel Gleish verify the responses prior to filing the motion for sanctions. Correct? That's correct. Your honor. Under what provision of rule 7037 is it appropriate for the trustee to seek sanctions after having received responses to interrogatories without conducting a meet and confer to obtain Daniel Gleish's compliance verification or to satisfy the trustee's remaining concerns, if any, after the responses were received? Your honor, I think the cases show that a belated response still constitutes a basis. Rule 7037D requires that before the bankruptcy court strike Daniel Gleish's answer under rule 7037B2A, the trustee is required to prove that Daniel Gleish failed to serve answers, failed to file objections, failed to file written responses to the interrogatories which had been properly served under rule 7033. Isn't that correct? That's correct, your honor. But in this case, the trustee moved to strike Daniel Gleish's answer under rule 7037D1AII, even though Daniel Gleish had provided unverified answers to the interrogatories more than two weeks before the trustee filed the motion for sanctions, and the trustee presented no evidence in the motion or at the hearing on the motion for sanctions that he sought to rectify the unverified answers, met and conferred with Daniel's counsel, nor did the trustee attach Gleish's answers to the interrogatories to the motion for sanctions, correct? Correct, your honor. And under these circumstances, why wasn't the bankruptcy court's decision to strike Daniel Gleish's answer and the entry of a default judgment a clear error of law in violation of the express provisions of rule 7037D? Your honor, I would refer to the ability of the court to enter sanctions for belated discovery responses. That last-minute tender of discovery responses doesn't cure prejudice or harm the other cases on the docket. I do appreciate that. What's the prejudice? What's the prejudice? The prejudice means you have to go to trial. That's not prejudice. The prejudice in this case was that the discovery responses were delayed until a point where we were less than 30 days from the close of discovery. So the trustee lost his ability for follow up on the responses that Daniel had provided, which raised a number of questions and things like that. I personally have never extended a discovery come up, so I know what you're talking about. Yeah, me neither. Yeah. Counsel, you've got to be serious here. Let's just move to the Gleish's for a second. The bankruptcy court struck the Gleish's answer to the adversary complaint under judgment against them as a sanction for their failure to attend a previously scheduled deposition under rule 7037D1Ai, correct?  The bankruptcy court previously conducted a scheduling conference on August 29, 2024, and set a discovery cutoff of January 31, 2024. But on January 10, 2025, the party stipulated to extend the discovery deadline to February 28, 2025, the dispositive motion deadline to March 14, 2025, and move the trial from June 17 to June 25, 2025. That's the adversary docket 2021, correct? We agreed to move the discovery deadline, not the trial date.  On January 21, 2025, the trustee filed an amended notices of deposition of the Gleish's for February 5, 2025. That's adversary dockets 18 and 19, correct?  Although the Gleish's did not appear for the scheduled depositions and they did not seek a protective order, they continued to communicate with the trustee. They agreed to extend the discovery deadline again without the need for the trustee to file a motion. Mr. Gleish agreed to appear for deposition at the trustee's office on January 28, 2025. And on March 17, 2025, the trustee emailed counsel for the Gleish's stating he agreed to set amended depositions for them on March 26 and March 28, 2025. That's adversary docket 39 at exhibit 2, correct?  Nevertheless, the trustee filed his motion for sanctions on February 20, 2025, and although the hearing on the motion was not conducted until April 1, 2025, the trustee never informed the bankruptcy court about any of his follow-up in the cases with debtor's counsel about the debtor and Mr. Gleish's attempts to cooperate in rescheduling their depositions or the trustee's willingness to reschedule Mr. and Mrs. Gleish's depositions to March of 2025. Instead, at the hearing on the motion for sanctions, the trustee asserted the only available remedy under the circumstances was the granting of a motion to strike and the defendant's answers and the entry of default judgment, correct? That's what we advocated for, yes. The trustee never sought the entry of an order compelling the debtor or Mr. or Mrs. Gleish to appear for deposition. The trustee never asked the court to enter an order that if they fail to appear at the next scheduled deposition without first obtaining a protective order, their answers would be stricken and the court would enter default judgment, correct? Correct. If I may address that. No, I have other questions, if you don't mind. Although the bankruptcy court said that it considered the relevant factors before imposing sanctions under Rule 7037D, specifically striking the Gleish's answers and entering a default judgment, the bankruptcy court made no specific findings to support that decision, correct?  Instead, the bankruptcy judge stated that she was not required to make specific findings. While the trial court is not required to make explicit findings, if it does not, the appellate court is entitled to review the record independently to determine whether the sanction was an abuse of discretion. That's Wanderer v. Johnson, right? And isn't that review akin to de novo review because the reviewing court independently determines if the trial court's decision to issue terminating sanctions under the circumstances was appropriate, correct? Yes, I agree with that. The reviewing court can substitute its judgment for that of the trial court on the question of whether the decision to issue terminating sanctions was appropriate, correct? I agree with that, yes. All right, so a court must weigh five factors in order to determine whether it will impose sanctions under Rule 7, terminating sanctions under Rule 7037D. One is the public's interest in expeditious resolution. Two is the court's need to manage its own docket. Three is the risk of prejudice to the defendants. Four is the public policy favoring disposition of the case on the merits. And five is the availability of a less drastic sanction, correct? Correct. The first of those two factors favor the imposition of sanctions in most cases, while the fourth cuts against dismissal or default judgment. Thus, the key factors are prejudice and the availability of lesser sanctions. That's Wanderer v. Johnson, correct? I agree, yes. The Ninth Circuit has found that the element of prejudice to be essential, stating that sanctions which interfere with a litigant's claim or defenses violate due process when they are imposed merely for punishment of an infraction that did not threaten to interfere with a rightful decision of the case. That's also Wanderer v. Johnson, where they also said that delay alone without a focus on its effects will not justify dismissal or default, correct? Yes, I agree with that. What prejudice did the trustee suffer other than delay? Other than delay? I think that is, and I think that's sufficient prejudice. It's not sufficient. It's not sufficient under Wanderer v. Johnson. You're just making up an argument. Give me what prejudice, what documents, what witnesses. Other than delay, what did the trustee lose in its case that it wouldn't have had available to it if the sanction hadn't been imposed? Delay. That's what the trustee was concerned about. Why wasn't a less drastic sanction, such as an order compelling Gleesha's deposition or a warning that failure to attend the next scheduled deposition would result in an order striking their answer, a less drastic sanction that the bankruptcy court should have imposed in this case? I believe the reason is because you have a pattern of abusing the discovery process, of delaying, of building an obstruction, and that by adding, you know, an additional relief for the appellants in this case, you're encouraging that kind of behavior to continue. You're encouraging them to keep stalling out because they know that they have at least one free go at it. Because if you require the court to do a lesser sanction in every situation, then you're going to have recalcitrant. Can I throw a thought in here? I'll just say a little bit more colloquially than Judge Gann has masterfully set forth what I think is the right standard. Why do we have to go to DEFCON 1 on this? You know, you didn't bring a motion to compel. Discovery deadlines can be moved. They've already been moved. I don't know too many judges who will say, no, I'm sorry, because this deposition didn't occur. We're not moving a discovery deadline. You know, I think that overall, if I can synopsize part of Judge Gann's point, you know, even if there has been some abuse, isn't there still an independent duty to say, is there something we can do except strike an answer here? And it doesn't look like that was even considered. Am I wrong about that? Without getting into my discussions with client, there were discussions. Yeah, yeah. In this case, and that's why we feel that laying out the factual background in this, we have a debtor who didn't disclose his interest in the Garden Rose property, didn't disclose $125,000 that was sitting in his account, didn't turn over that money to the trustee, didn't turn it over after Judge Cox has ordered him to turn it over. In the adversary case, we have the answer deadline came and went, so we ended up having to file a notice of intent to take default to get the answer filed. We had to submit the discovery plan, a one-party discovery plan, because we couldn't get that coordinated with them. And that's before we even get into the discovery issues. Counsel, the debtor was on one front being confronted with the 727 action, trying to defend that, which is still pending and hasn't yet been determined by the court, correct? Correct. I believe it's waiting on a motion to dismiss. And you had objections to the claim of exemption, which were litigated by the debtor and ultimately successfully defended by the trustee, correct? Correct, Your Honor, yes. And you had this adversary proceeding and turnover actions that were being sought by the trustee and this adversary proceeding, correct? Yes, Your Honor. So the debtor wasn't not doing anything. The debtor wasn't cooperating with the trustee, but the debtor was involved in serious litigation with the trustee over many various issues during the course of this bankruptcy case, correct? Correct. To be clear, the U.S. trustee's office is handling the 727 action. It doesn't matter. The debtor still has to defend it, doesn't he? Agreed, Your Honor. Yes. Sorry, I miss—yes, you're correct. I'm looking at it from his side, not from your side, because you're telling us what a bad actor and unresponsive person, debtor he is. Not looking at the merits, because we're not getting the merits. This is not a merits determination at this point. This is a question of whether the sanction was appropriate, right? I agree with that, yes. All right. Well, you're out of time. That's my time. And I appreciate your responses. Thank you, Your Honors. All right. Debtor's counsel, Mr. Werner Hoyd. Based upon everything that's been said and has been done, I don't have any other comments for rebuttal. If there's any questions, I'd be happy to answer them. But I don't have anything else to add. I don't have any questions. Anyone else? All right. No, thank you very much. Thank you both. This matter is submitted.
judges: Brand, Lafferty, and Gan